*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. GORDON, Minor.

UNPUBLISHED
June 9, 2022

No. 358085
Wayne Circuit Court
Family Division
LC No. 2015-520977-NA

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent, the father of the minor child, appeals as of right the trial court's order terminating his parental right to the child under MCL 712A.19b(3)(b)(*i*), (c)(*i*), and (j). We affirm.

I.

Respondent first contends that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (c)(*i*), and (j), which permit termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

-1-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The record supports the trial court's reliance on these statutory grounds.

The most serious allegation that came to light during the lower court proceedings was the child's disclosure that respondent had sexually abused him. Approximately three years after the child was removed from respondent's care, the child disclosed to his therapist that respondent had touched him in a sexually inappropriate manner. The child participated in a forensic interview where he made disclosures consistent with what he had revealed to the therapist. After the court held a tender-years hearing, the forensic interviewer was permitted to testify regarding statements made by the child. The court concluded that the child's allegations of sexual abuse were credible.

Respondent argues that the child's statements were not credible and that his accusations were fabricated because he was sexually preoccupied. The record indicates that the court carefully considered all the evidence before concluding that the child's accusations were credible. It considered not only the substance of the allegations, but also the circumstances surrounding the disclosures. It found specifically compelling that the child had been consistent in his disclosures. Respondent had the opportunity to perpetrate the abuse because the child was in his unsupervised care both before removal in November 2016 and during the case when unsupervised weekend visitation was permitted. Although respondent suggests that something untoward could have happened in the residential facility or at school, the child never identified anyone other than respondent as the perpetrator. Further, contrary to respondent's suggestion, there was no evidence that the child had any encounters of a sexual nature with other students or residents. Indeed, the residents were always supervised, and the child never had a roommate while a resident at the facility.

In sum, the record discloses clear and convincing evidence from which the trial court reasonably could have found that the child was sexually abused and respondent was the perpetrator. "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Accordingly, the trial court did not clearly err when it terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*).

Even if the court erred by finding that there was credible and sufficient evidence of sexual abuse to warrant termination under MCL 712A.19b(3)(b)(*i*), the trial court also terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j), and clear and convincing

evidence supports termination on these alternative grounds. "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id.* at 711. The conditions that led to the adjudication included respondent's physical abuse of the child. After the adjudication, the court ordered respondent to comply with a treatment plan designed to improve respondent's parenting skills and remove the barriers to reunification, which included, among other things, parenting classes, parenting time, a psychological evaluation, individual therapy with an anger-management component, and family therapy with the child. When substance abuse issues came to light, respondent stipulated to adding a substance abuse component to his treatment plan. Despite these efforts, at the time of termination, the evidence demonstrated that the circumstances that precipitated the child's removal continued to exist. Respondent was in no better position to parent the child than when the child was removed from his care in November 2016. The record clearly demonstrates that during the four years the child was a court ward, respondent could not obtain and maintain the stability and skills necessary to safely parent his special-needs child. Respondent would take one step forward, be granted additional privileges, and then engage in behavior that amounted to two steps backward.

One of the only services respondent completed was parenting classes. However, it is clear that he did not benefit from this educational program. During supervised visits, respondent was noted to engage in inappropriate behavior with the child, including kissing the child for an extended period on the mouth, putting his hand up the child's shirt, and resting his chin inappropriately on the child's lap. Respondent also improperly attempted to discuss the sexual abuse allegations with the child, including instructing the child to retract his allegations. The evidence also established that during the period respondent was granted unsupervised parenting time, he again physically abused the child.

Also supporting the trial court's ruling was that respondent failed to adequately address his substance abuse issues, as he admitted to using marijuana every day and consuming alcohol to cope with the removal of his child. At least two witnesses testified that respondent frequently arrived at parenting time smelling of alcohol and behaving in a manner suggesting that he was under the influence. On at least one occasion, when the caseworker arrived at the home to pick up the child from an unsupervised visit, a strong odor of alcohol was noted. Respondent refused the caseworker's request at those times to submit to a drug test. Indeed, respondent engaged in a wholesale failure to comply with the court's order requiring weekly random drug and alcohol screens.

Likewise, the evidence established that respondent refused to participate fully in services intended to address his substance abuse issues. The caseworker acknowledged that she did not specifically refer respondent to a substance abuse treatment program because respondent was struggling to comply with the existing services, so she was reluctant to add an additional service. However, the caseworker testified that substance abuse was an integral component of respondent's

individual therapy, but respondent did not consistently attend his counseling appointments. At the February 25, 2021, termination hearing, the caseworker assigned to work with the family since July 2019 testified that she had referred respondent six times to individual therapy, but each referral was terminated for noncompliance. Accordingly, respondent rejected an opportunity to fully address a significant obstacle to reunification with his son.

Clear and convincing evidence supports the trial court's finding that, at the time of termination, the conditions that led to the adjudication continued to exist. Further, the record similarly establishes that there was no reasonable likelihood that respondent would be in a position to safely parent his child within a reasonable time. At the time of termination, the child had been in care for more than four years. During that time, respondent was unwilling or unable to address the barriers to reunification. There was no reasonable likelihood that respondent would shed his longstanding behavioral patterns if given more time. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (j).

II.

Next, respondent argues that the trial court erred by finding that termination of parental rights was in the child's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss,* 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the child's best interests. Children require parents who can provide them with a safe, stable, and permanent home. This was particularly important for this child because of his special needs. The child was cognitively impaired, and he suffered from ADHD. His treating therapist testified that he required 24-hour care and needed ongoing therapeutic services, including speech, language, and life skills. The evidence demonstrated that respondent was not able to meet the child's special needs. Respondent had not benefited from the services offered, and substance abuse continued to be an obstacle to reunification. Further, when respondent was granted unsupervised parenting time, he physically and likely sexually abused the child. These events occurred while respondent was being scrutinized by DHHS and the court.

Moreover, there is evidence from which the court could have discerned that the child did not want to return to respondent's home. The child's speech and language skills were significantly impaired, so he could not articulate his needs and desires. However, the testimony established that when respondent was permitted unsupervised visits with his son, the child acted out with extreme behaviors before the visits.

At the time of termination, the child was 15 years old. He had been a ward of the court for more than four years, and for the vast majority of that time he resided at CCH. The caseworker and CCH staff testified that the child would age out of the program in a few years, but because of his cognitive impairments, exceptions could be made. Respondent suggests that termination of his parental rights was not warranted because there was no viable permanency plan for the child and that respondent's home remained the only remaining placement for the child. However, the caseworkers continued to explore other placement options for the child. Further, the child was thriving at CCH, he felt safe there, and his therapist explained that the child was bonded to individuals in the CCH community. More significantly, although the child's future was uncertain, a preponderance of the evidence established that respondent's home was not a viable placement option because the child would not be safe in respondent's care. Termination of respondent's parental rights was the only avenue to ensure that respondent would not have the ability to harm the child going forward. The trial court did not clearly err when it found that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray